**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:06 CV 422**

| | | |
|---|---|---|
| **COMMERCIAL DEFEASANCE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | <u>**MEMORANDUM AND**</u> |
| | ) | <u>**RECOMMENDATION**</u> |
| **GREG STRANGER, THE BOSTON** | ) | |
| **CONSULTING GROUP, and CAPITAL** | ) | |
| **DEFEASANCE GROUP, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Greg Stranger's Motion to

Dismiss Plaintiff Commercial Defeasance, LLC's Amended Complaint For Lack of Personal

Jurisdiction, Improper Venue and for Failure to State a Claim" (Document No. 37) and "Defendant

Capital Defeasance Group, LLC's Motion to Dismiss..." (Document No. 40), filed April 10, 2007;

and the responses thereto. This matter has been referred to the undersigned Magistrate Judge

pursuant to 28 U.S.C. §636(b), and is now ripe for disposition.

Having carefully considered the papers, the record, the applicable authority, and the

arguments of the parties at a hearing on May 15, 2007, the undersigned will respectfully recommend

that the motions be <u>denied</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] For the purpose of deciding these motions to dismiss, the facts are construed in the light most favorable to the Plaintiff and are presented here as set out by the Plaintiff. <u>See</u> <u>Darcangelo v. Verizon Communications, Inc.</u>, 292 F.3d 181, 189 (4th Cir. 2002) ("at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff").

Commercial Defeasance, LLC ("Commercial" or "Plaintiff") is a commercial mortgage-related services company formed and headquartered in Charlotte, North Carolina. Commercial is one of a small number of companies nationwide specializing in facilitating the defeasance of securitized mortgage loans. In 2005, Summit Partners, L.P. ("Summit"), a private equity and venture capital firm, became interested in making a substantial investment in Commercial. Commercial agreed to provide Summit with its confidential, proprietary information and trade secrets (collectively, "trade secrets") to assist Summit's decision on whether to invest. The disclosures to Summit were governed by a confidentiality agreement between the parties designed to protect Commercial's trade secrets.

Summit retained The Boston Consulting Group, Inc. ("BCG"), a strategy and general management consulting firm, to perform an in-depth due diligence and analysis of Commercial. This analysis involved the review and investigation of Commercial's trade secrets. BCG and Summit entered into a confidentiality agreement to ensure the protection of Commercial's trade secrets. In that document, BCG agreed that the firm, including its representatives and employees, would not disclose Commercial's trade secrets or use them to Commercial's detriment.

BCG employed Greg Stranger ("Stranger") as a manager and assigned him to supervise the due diligence project related to Commercial. In his employment agreement with BCG, Stranger expressly agreed that (1) he would not disclose or use the confidential information of BCG's clients, and (2) he would not assist anyone engaged in or considering competition with any former BCG client. It is alleged that Stranger had no prior experience with or understanding of the commercial mortgage loan defeasance industry. In December 2005, Stranger led the review of Commercial, including its trade secrets.

Stranger spent approximately three days in Charlotte, including two days at Commercial's headquarters, gathering information about the company. Stranger received a comprehensive tutorial on the business, including debriefings by Commercial's executive management team and a full explanation of the company's trade secrets. While Stranger was in Charlotte, he had unfettered access to Commercial's trade secrets and during that visit such information was downloaded onto a BCG computer. Following his Charlotte visit, Stranger maintained regular e-mail and telephone contact with Commercial's personnel in Charlotte. He oversaw the submission of written questions from BCG to the Charlotte company. Stranger also had access to Commercial's customer lists and contacted its clients and prospective clients.

In late December 2005, BCG submitted its due diligence report to Summit addressing all aspects of the mortgage loan defeasance market and future prospects for Commercial. Commercial contends that Stranger launched a scheme to steal Commercial's trade secrets and establish a rival business while performing his review of the company for Summit. In early January 2006, Summit requested that Stranger and BCG destroy all trade secrets of Commercial in their possession. On January 6, 2006, Stranger indicated to Summit he would do so. In April 2006, Stranger formed Capital Defeasance Group, LLC ("Capital" or collectively with Stranger, "Defendants").

Based on information uncovered by Commercial, it appears Stranger had begun preparations to form a new defeasance company by December 29, 2005. On that date, Stranger contacted the attorney who later filed Capital's certificate of formation with an email with the subject line of "NewCo." Commercial alleges that Stranger has exercised complete domination and control over Capital and deployed the new company as a vehicle to use the stolen trade secrets, to earn profits from the stolen property, and to cause specific and direct harm to Commercial.

Commercial filed its Complaint in this matter on October 4, 2006. On March 13, 2007 Commercial filed an "Amended Complaint" (Document No. 24). The "Amended Complaint" alleges ten claims against one or more of the Defendants: (1) violation of the North Carolina Trade Secrets Protection Act; (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act; (3) breach of fiduciary duty; (4) unjust enrichment/ constructive trust; (5) false association and sponsorship and unfair competition under section 43(A) of the Lanham Act; (6) common law trademark infringement; (7) cyberpiracy under section 43(d) of the Lanham Act; (8) breach of contract; (9) breach of implied covenant of good faith and fair dealing; and (10) negligent supervision. Defendants Stranger and Capital filed these motions to dismiss the Amended Complaint on April 10, 2007 alleging lack of jurisdiction, improper venue and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6).

## II. STANDARD OF REVIEW

As it must, this Court sets a high bar for granting a motion to dismiss. Defendants first seek to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person. A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). The question of jurisdiction is answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc.,

126 F.3d 617, 623 (4th Cir.1997). Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state.

Personal jurisdiction can be either general or specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state and is not at issue in the instant case. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (emphasis added).

Defendants also seek to have this action dismissed pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. Once a defendant raises the issue of improper venue, the plaintiff bears the burden to prove that venue is proper. Bartholomew v. Virginia Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir. 1979). Venue is proper in (1) "a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). "[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

The Defendants also argue that the Plaintiff's case should be dismissed in part for failure to state a claim upon which relief can be granted. A motion to dismiss made under Rule 12(b)(6) tests the "legal sufficiency of the complaint." Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A motion to dismiss for failure to state a claim should be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all

reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). "In general, a motion to dismiss will not be granted unless a plaintiff can prove no set of facts which would support his claim and entitle him to relief." Venkatraman v. REI Sys. Inc., 417 F.3d 418, 420 (4th Cir. 2005) citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### III. DISCUSSION

Although Defendants assert grounds for dismissal under Fed.R.Civ.P.12(b)(2), 12(b)(3) and 12(b)(6), the parties acknowledge that the Court's focus is properly on the personal jurisdiction issue. It is the undersigned's view that the Court does in fact have personal jurisdiction over these parties and that the motions to dismiss should be denied. As suggested above, Commercial does not contend that Defendants' contacts are sufficiently substantial or continuous and systematic to allege general jurisdiction; therefore this discussion will analyze the applicability of specific personal jurisdiction to the facts, as they pertain to Stranger and Capital.

### A. **Jurisdiction over Stranger**.

Defendants argue that Commercial's "Amended Complaint" does not allege that Stranger engaged in any wrongful conduct in North Carolina and therefore there can be no personal jurisdiction. See "Memorandum in Support..." (Document No. 38) p.10-11. The undersigned disagrees. The "Amended Complaint" clearly alleges wrongful acts occurring in this district. See "Amended Complaint" (Document No. 24) ¶ 9 and 11.

Defendants further assert that Stranger's contacts with North Carolina in this matter are limited to a single short trip and that the wrongful acts alleged by Commercial involving Capital

would have necessarily occurred in California, its place of business. Defendants dispute any purposeful availment of the North Carolina forum. They contend that the single business trip failed to create the "significant activities" or "continuing obligations" within the forum envisioned by Burger King v. Rudzewicz, 471 U.S. 462, 475-476 (1985).

Commercial essentially contends that Stranger hatched his plot to take his new knowledge of the defeasance industry and the trade secrets of Commercial to form his own defeasance company while in Charlotte, North Carolina. Not only did Stranger begin this wrongful activity while in Charlotte, but after he left, he maintained contact with company employees in Charlotte and continued to gather information that would benefit the formation of his own competing defeasance company.

The parties reach different results when applying this Circuit's three-part inquiry to determine specific jurisdiction. The three-part test articulated in ALS Scan, Inc. v. Digital Service Consultants, Inc. provides:

> [i]f the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. In determining specific jurisdiction, we consider (1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." See Christian Science Bd., 259 F.3d at 216; see also Helicopteros, 466 U.S. at 414 & n. 8, 104 S.Ct. 1868 (describing a basis for jurisdiction where "a controversy is related to or 'arises out of' a defendant's contacts with the forum").

ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); see also New Wellington Financial Corp. v. Flagship Resort Development Corp., 416 F.3d 290, 295 (4th Cir. 2005).

Applying the Fourth Circuit's three-part test, the undersigned finds jurisdiction is appropriate. The first step of that inquiry – purposeful availment – is the most contentious in this case; however, in viewing the facts as analogous to those in <u>Calder v. Jones</u>, 465 U.S. 783 (1984), it is clear that Stranger "purposefully availed" himself of the privilege of conducting activities in North Carolina. Accepting the facts as presented by Commercial, Stranger knew or should have known that his intentional conduct would cause injury in North Carolina. According to Plaintiff, Stranger visited the forum, hatched his plot here, had ongoing contacts with employees here, intentionally utilized Plaintiff's trade secrets accessed in this forum to create a rival company, chose a name for the company that was nearly identical to Plaintiff's name, copied concepts from Plaintiff's website for Capital's website, used strategic national advertising to expressly harm Plaintiff, and misappropriated Plaintiff's trademark. Taking the allegations as true, Stranger must have known that such actions would cause harm to the personal and/or property interests of Commercial located in this jurisdiction. In other words, under the <u>Burger King</u> standard, nonresident Defendants "purposefully direct[ed]" activities toward forum residents. <u>See</u> <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 473 (1985).

Commercial contends that in intentional torts cases such as this one the first prong of the Fourth Circuit's three-part test, the "purposeful availment" requirement, should be analyzed under the "effects test" in <u>Calder</u>. <u>See</u> <u>MCSi, Inc. v. Woods</u>, No. C-02-02865 JF(RS), 2002 WL 32059741, at *2 (N.D.Cal. Oct. 7, 2002). The <u>Calder</u> "effects test requires: (1) intentional actions; (2) expressly aimed at the forum state, (3) causing harm, the brunt of which is suffered and the defendant know[s] is likely to be suffered - in the forum state." <u>MCSI, Inc.</u> at *2, <u>citing</u> <u>Calder</u>, 465 U.S. at 789-90. The Supreme Court in <u>Calder</u> held that the in-state effects of a defendant's out-of-state conduct can

be sufficient to establish the minimum contacts necessary to find personal jurisdiction over a defendant; "[t]he fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects." Calder, 465 U.S. at 787.

Calder involved the question of whether a National Enquirer reporter and editor, who were both Florida residents, could be subject to personal jurisdiction in California in a defamation case brought by actress Shirley Jones. The National Enquirer published an allegedly defamatory article that was written in Florida and disseminated nationwide by the magazine. The Court found specific jurisdiction over the defendants because of "their intentional conduct in Florida calculated to cause injury to respondent in California." Id. at 791. The Court emphasized that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California," and that the defendants "knew the brunt of that injury would be felt" by the plaintiff in California. Id. at 789-90. The decision in Calder found jurisdiction even though it appears neither defendant made any visit to California related to the alleged wrongdoing. Id. at 785-86.

Likewise, in the instant case, Defendants' "intentional and allegedly tortious actions" were aimed at Commercial in North Carolina and Defendants "knew the brunt of injury" would be felt here, where Commercial is headquartered. It is actually more straightforward to find jurisdiction in this case, considering that not only did Defendants take actions they knew would cause harm here, but Defendant Stranger did visit the forum state and allegedly began his tortious activity while in the forum state.

Commercial further contends that Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) reiterated the thrust of Calder, stressing that a state can exercise jurisdiction over out-of-state

defendants to protect the rights of state residents:

> a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.

If Plaintiff's allegations are accepted as true, then Greg Stranger "purposefully directed" his activities at the forum and North Carolina has a "manifest interest" in providing a convenient forum to Plaintiff.

Commercial also contends that a case with similar facts in the Middle District of North Carolina denied a motion to dismiss for lack of personal jurisdiction, and in doing so, noted that Calder "stands for the proposition that a court may exercise personal jurisdiction over a non-resident defendant who acts intentionally to cause harm to a resident's legally protected interest, knowing that such conduct will cause harm at the victim's domicile to personal or property interests located there." Musselwhite v. Int'l Learning Works, Inc., No. 2:97CV460, 1997 WL 34588522, at *3 (M.D.N.C. Oct. 17, 1997). The underlying facts of the instant case applied to the "effects test" of Calder and its progeny convincingly support a finding that Stranger "purposefully availed" himself of the forum and that specific personal jurisdiction exists.[2]

The second question in this Circuit's analysis of personal jurisdiction is whether the plaintiff's claims arise out of those activities directed at the forum state. Once again, taken in the light most favorable to Commercial, the claims arise directly from the activities directed at the forum state. It is Commercial's position that the knowledge and trade secrets Stranger used to perpetrate

---

[2] Although satisfying the Calder standard is sufficient to subject Defendants to personal jurisdiction, the undersigned will also complete the analysis under the Fourth Circuit's three-part test.

his transgressions against Commercial arose directly from his activities as a BCG employee while in Charlotte and his continuing activities immediately afterward. As discussed above, Defendants have suggested that the Plaintiff's allegations are based on activities that would have arisen later. Nevertheless, the undersigned is persuaded that Commercial's claims satisfy this prong. Even if Defendants' unlawful conduct continued in other jurisdictions, there is sufficient evidence at this stage to suggest that the activity arose from Stranger's contacts with this forum.

The final question in this three-part inquiry is whether the exercise of personal jurisdiction would be constitutionally "reasonable." Commercial cites the following pertinent factors that have been used in this type of reasonableness analysis: (1) the interest of the state in providing a forum for the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on defendant; (4) the relative burden of prosecution elsewhere on plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of multiplicity of suits on conflicting adjudications. Asahi Metal Indus. Co. v. Super. Ct. Of Cal., Solano County, 480 U.S. 102, 113 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

The parties to this lawsuit, including BCG, agree that this case is going to be litigated somewhere. If not in the Western District of North Carolina, BCG contends jurisdiction may be appropriate in Massachusetts; Stranger and Capital contend California is the proper forum. Arguably, some portion of the alleged wrongful activity occurred in each of these three states. Continuing to view the facts in a light most favorable to Plaintiff, however, the wrongdoing began in North Carolina and this is where the brunt of the harm has been felt and where it continues. Pursuant to the criteria set forth in Asahi, this forum has an interest in regulating the alleged

wrongful activity that has occurred here, as well as in providing a forum for a resident Plaintiff. Viewing the nationwide scope of Defendants' business, and coupled with the fact that Stranger has found his way here before, the Court does not view this forum as unduly burdensome on any party. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Asahi, 480 U.S. at 114. Considering the Asahi factors above, the undersigned is convinced that exercise of specific personal jurisdiction over these Defendants in North Carolina is constitutionally reasonable. Id. at 113.

**B. Jurisdiction over Capital**.

**1. Imputability of Stranger's actions to Capital**.

An integral issue to the discussion of Defendants' motions to dismiss is the extent to which Stranger's actions are imputable to Capital.[3] Capital, formed April 24, 2006, is a Delaware limited liability company with its principal place of business in San Francisco, California. Capital has no presence in North Carolina. Capital argues that it has never engaged in any activity in North Carolina and that it cannot be "bootstrapped" to Stranger under theories of alter ego or ratification. The undersigned agrees that Capital lacks the kind of direct contacts typically used to establish specific personal jurisdiction. Commercial's strongest argument for establishing personal jurisdiction over Capital is that Stranger's actions are fairly attributable to Capital. See Western Steer - Mom 'N' Pop's, Inc. v. FMT Investments Inc., et al., 578 F.Supp. 260, 265 (W.D.N.C. 1984).

In Mom 'N' Pop's, Defendant Todd solicited Western Steer Steakhouse to become a

---

[3] Since Defendant BCG has not joined in the motions to dismiss, the imputability of the underlying actions of Stranger and Capital to BCG will not be considered.

franchisee in Georgia. During negotiations, Todd and his partners were provided confidential information and trade secrets pertaining to all aspects of the business by Western Steer, a North Carolina corporation. Id. at 262. Todd and his partners formed a company called FMT Investments to develop and operate the franchise restaurant Id. When Western Steer refused to grant FMT a franchise, FMT formed another company, Fayette Investments, Inc., and utilizing confidential information they had gained, Fayette opened a restaurant with a similar name, food type and atmosphere to Western Steer. Id. at 263. Allegedly neither Todd nor his partners had any prior restaurant experience. Id. at 262. Western Steer filed an action for misappropriation of trade secrets and other claims. Defendants moved to dismiss for lack of personal jurisdiction, or in the alternative to transfer to Georgia. This Court denied the motion.

Under circumstances analogous to the instant case, this Court noted that the direct contacts of Defendant Fayette with the forum were insufficient to establish jurisdiction unless the contacts of Defendants Todd and FMT were fairly attributable to Fayette. Mom 'N' Pops's, at 265. The Court concluded the contacts were attributable:

> the alleged history of FMT and Fayette, their similar characteristics, the circumstances giving rise to the creation of Fayette and their symbiotic relationship has created sufficient showing of an identity of interest that the acts of FMT may be fairly attributed to Fayette for jurisdictional purposes. To hold otherwise would exalt form over substance.

Id.

Here, Commercial presents a prima facie case that Capital, like Fayette, was created for Stranger to profit from stolen trade secrets and Capital has reaped the benefits of Stranger's contact with North Carolina. The undersigned finds that Stranger's actions reviewing Commercial's trade secrets, interviewing its executives and employees, and contacting its clients, while simultaneously

planning the incorporation of business in the exact same field with a very similar name, should lead to the same result as in Mom 'N' Pop's.

As Capital notes in its "Memorandum...", the "general rule for purposes of jurisdictional analysis is that the contacts of one corporate entity do not impute jurisdiction to its owner or vice versa." Document No. 41 at 12, citing Rush v. Savchuk, 444 U.S. 320, 332 (1980); Captain Sheriff Saudi, v. Northrop Grumman Corp., 427 F.3d 271 (4th Cir. 2005). However, Capital also explains:

> [t]his presumption of corporate separateness may be overcome, and the jurisdictional contacts of one entity may be imputed to another, but only by a showing of "clear evidence" "of one corporation asserting sufficient control to make the other its agent or alter ego." At the motion to dismiss stage a plaintiff must make, at a minimum, a prima facie showing of a sufficient jurisdictional basis in order to survive a jurisdictional challenge.

Id. at 13 (citations omitted). As in Mom 'N" Pop, the undersigned is persuaded that the relationship between Stranger and Capital overcomes the presumption of corporate separateness and that Commercial has articulated a prima facie showing of a sufficient basis for jurisdiction.

### a. Alter Ego

Basing personal jurisdiction on an "alter ego" theory attempts "what the North Carolina Court of Appeals has termed 'veil-piercing in reverse.'" Anderson v. Dobson, No. 1:06CV2, 2006 WL 1431667 at *6 (W.D.N.C. May 22, 2006), citing Strategic Outsourcing, Inc. v. Stacks et al., 176 N.C. App. 247, 254, 625 S.E. 2d 800, 805 (2006). "Such procedure for establishing personal jurisdiction is permitted. However, while permitted, the necessary showing is in no way minimal." Id.

> Generally, under the "alter ego" or instrumentality" theory, "a corporate entity may be disregarded where there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." 18 Am.Jur.2d

> Corporations § 45.  We conclude that here, where one entity is the alter-ego, or mere instrumentality, of another entity, shareholder or officer, the corporate veil may be pierced to treat the two entities as one and the same, so that one cannot hide behind the other to avoid liability.  See Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1350 (2d Cir. 1974).

Strategic Outsourcing, 625 S.E. 2d at 805.

"Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'"  Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1184 (Del.Ch., 1999) (citation omitted).  "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."  Id.  This is precisely what Commercial alleges:

> 76.  Stranger formed Capital Defeasance as a **sham** entity to further his unlawful scheme to profit from the use of stolen Trade Secrets.  Capital Defeasance is a mere instrumentality for Stranger's illicit activity.

> 77.  Stranger has exercised complete domination and control over Capital Defeasance, which is alter ego.  Stranger has deployed Capital Defeasance as a **vehicle** to use the stolen Trade Secrets, to earn profits from his use of he stolen intellectual property and to cause specific and direct harm to Commercial Defeasance.

"Amended Complaint"(Document No. 24 at 16) (emphasis added).

Capital contends that such allegations are conclusory and insufficient to survive a motion to dismiss.  The undesigned disagrees.  As stated above, this Court sets a high bar on a motion to dismiss, which essentially tests the sufficiency of a complaint.  Here, Plaintiff presents claims against Capital (and Stranger) that survive such a motion.  Commercial's "Amended Complaint," briefs, and supporting exhibits and affidavits provide sufficient support at this stage of litigation to allow the litigation to go forward.  If discovery reveals that the evidence of the allegations is inadequate, then

Defendants will have opportunities later in the litigation to point out those deficiencies. For now, the undersigned is satisfied that the facts as presented by Commercial show that Capital acted as the alter ego of Stranger and for reasons described above this Court is entitled to jurisdiction over Stranger, and thus over Capital.

### b. Ratification.

Another compelling argument Plaintiff makes is that Stranger's pre-incorporation activities may be imputed to Capital by the latter's ratification of those activities. "Case law is sparse regarding whether the pre-incorporation contacts of an individual can be attributed to a corporation for the purposes of analyzing personal jurisdiction; nevertheless, there are a few cases that lend some direction to this issue." Burlington Indus., Inc. v. Yanoor Corp., 178 F.Supp. 2d 562, 568 (M.D.N.C. 2001) citing Rees v. Mosaic Techs., Inc., 742 F.2d 765, 768 (3d Cir. 1984).

In Rees, a Pennsylvania citizen brought suit against a Delaware corporation with its principal place of business in New Hampshire. The District Court for the Western District of Pennsylvania "dismissed the complaint on the ground that Rees had not alleged facts sufficient to establish in personam jurisdiction over the defendant...." Rees, 742 F.2d at 766. At issue were the pre-incorporation activities of a promoter and co-founder of the defendant corporation. Plaintiff entered into an oral contract with the promoter to provide competitive information and to recruit personnel for high level managerial positions at the corporation five months prior to its incorporation. Id. at 767. The Third Circuit disagreed "with the district court's conclusion that *pre-incorporation* activities may not be considered in the jurisdictional calculus." Id. at 768. That court determined

> [t]hus, while it is true that in general, a corporation does not exist as
> a legal entity until incorporated, and therefore cannot have agents
> before its organization, the pre-incorporation activities of a promoter
> may form the basis for corporate liability when they have been

ratified by post-incorporation acts of the corporation. The acts of ratification relate back to the time of the original activities and establish an agency relationship permitting the acts of the promoter to constitute, in effect, acts done by the corporation.

Id. at 768-69 (citations omitted).

More recently, Judge Bullock of the District Court for the Middle District of North Carolina relied on Rees to support an opinion stemming from facts similar to the instant case. See Yanoor, 178 F.Supp. 2d 562. In that case, Plaintiff Burlington Industries, Inc. ("Burlington") filed a complaint against Defendant Yanoor Corp. ("Yanoor") relating to an asset purchase agreement. Id. 178 F. Supp 2d at 563. Burlington was a Delaware corporation with its principal place of business in North Carolina; Yanoor was an Arkansas corporation with its principal base in Arkansas. Id. at 563-64. Although the parties disputed the facts surrounding the negotiation of an agreement, it seems clear that negotiations began with a representative of Yanoor, its future CEO, acting prior to Yanoor's incorporation. Negotiations included two short trips to North Carolina by Yanoor's representative and a series of phone calls, faxes and e-mails. Id. Yanoor argued "that because [it] was not in existence at that time th[e] first meeting is not attributable to Yanoor for the purposes of determining personal jurisdiction." Id. at 565.

Judge Bullock noted that Yanoor had two days of physical contact with the State of North Carolina, meeting with Burlington executives at Burlington's headquarters, and then on-going communications via telephone, fax and email. Id. at 567. Judge Bullock was persuaded "that [these contacts] constitute an adequate basis for the exercise of personal jurisdiction over Yanoor." Id. at 568. "Moreover, this contact was related to the present cause of action because the primary purpose was to finalize arrangements for the closing of the Agreement." Id.

The facts of Yanoor are very similar to those in the instant case, particularly the number and

type of contacts with the forum. Likewise, the undersigned concurs with the Bullock analysis that includes the principle that the contact with the forum is more significant if it relates to the present cause of action. In this case, Commercial's lawsuit relates back to contact and actions of Stranger in this forum and then the continuing communications with the forum. Accepting the facts in the light most favorable to Commercial, as we must, reveals that Capital had actual and constructive knowledge that its principal stole trade secrets during the course of his contacts with Commercial in this forum. Capital knowingly accepted the benefit of Stranger's unlawful conduct, was founded and named based on the fruits of that unlawful conduct, and thus ratified Stranger's unlawful conduct which began in this forum.

   C. **Venue**.

   Defendants also move to dismiss for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). When an objection to venue is raised under 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the action was brought. See Static Control Components, Inc., v. Intersolution Ventures Ltd., No. 1:05CV00401, 2006 WL 2042900, at *10 (M.D.N.C. July 17, 2006) citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C. 1996). In light of the preceding analysis, on the issue of personal jurisdiction, the undersigned finds a determination of venue is relatively straightforward.

   Where jurisdiction in a civil action is not founded solely on diversity of citizenship it may be "brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated...." 28 U.S.C. § 1391(b). As determined above, each defendant is subject to jurisdiction in

this district and therefore each "resides" in this district, making this district a proper venue. This includes Capital, the corporate defendant; pursuant to 28 U.S.C. § 1391(c) "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Because it has been determined above that Capital is subject to personal jurisdiction in North Carolina, it is also considered a "resident" of this district for venue purposes.

The Middle District of North Carolina has conducted a nearly identical analysis of venue:

> Yanoor has also moved to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. 28 U.S.C. § 1391(a)(1) provides that a civil action founded on diversity of citizenship may be brought in "a judicial district where any defendant resides." Section 1391(a)(2) provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As the court has noted above, Yanoor is subject to jurisdiction in this district. Therefore, Yanoor "resides" in this district, making this district a proper venue. 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.").

Yanoor, 178 F.Supp. 2d at 569.

Furthermore, it is apparent to the undersigned that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C . § 1391(b)(2). As described in the jurisdictional analysis above, taking the facts in the light most favorable to Plaintiff, the events and actions giving rising to the underlying claims began in this district and this is where the brunt of the harm has been borne.

For all these reasons, the undersigned is convinced that Plaintiff has satisfied its burden to establish that venue is proper in this district.

### D. **Failure to state a claim upon which relief can be granted**.

Finally, Defendants move to dismiss Commercial's claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Defendants seek to dismiss Counts 5, 6, and 7 of the "Amended Complaint" (Document No. 24) for statutory and common law trademark infringement and cyberpiracy, and Stranger moves to dismiss Count 3 for breach of fiduciary duty.

The Court sets a very high bar for the granting of a 12(b)(6) motion. As Stranger notes, a "12(b)(6) motion 'functions to test the legal sufficiency of the complaint.'" "Memorandum..." (Document No. 38 at 17) citing Byrd v. Hunt, 136 F.Supp. 2d 511, 513 (M.D.N.C. 2001). "In general, a motion to dismiss will not be granted unless a plaintiff can prove no set of facts which would support his claim and entitle him to relief." Venkatraman v. REI Sys. Inc., 417 F.3d 418, 420 (4th Cir. 2005). The undersigned finds the complaint legally sufficient and will deny the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

As to Counts 5-7, Defendants primarily contend that the term "commercial defeasance" is a generic term and therefore can never be a trademark. Commercial counters, in part, by arguing that "courts have deemed the question of whether or not a term is generic and thus completely unprotected under the trademark laws ... to be an issue of fact." Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc., 690 F. Supp. 1457, 1460 (D.Md. 1988) aff'd, 870 F.2d 654 (4th Cir. 1988). A question of fact is not appropriately resolved on a motion to dismiss. The undersigned agrees with Commercial that Defendants' argument is faulty on this point and the motion to dismiss must be denied.

Defendant Stranger also contends that Count 3 should be dismissed for failure to state a claim because Commercial fails to plead any cognizable fiduciary duty because there was no "special

confidence" between Commercial and Stranger. Again, Commercial responds that the existence of a fiduciary duty is inherently fact-intensive and not appropriate for dismissal under 12(b)(6). See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), aff'd as modified sub nom, Republican Party of N.C. v. N.C. State Bd. Of Elections, 27 F.3d 563 (4th Cir. 1994). The undersigned agrees and determines that it would be premature for the Court to dismiss Commercial's claims at this stage of the litigation.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendants' motions to dismiss be **DENIED**.

## V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

_____

**SO ORDERED AND RECOMMENDED**.

Signed: June 20, 2007

David C. Keesler
United States Magistrate Judge