UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 3:06 CV 422-C

COMMERCIAL DEFEASANCE, LLC,

        Plaintiff,

v.

GREG STRANGER;
THE BOSTON CONSULTING GROUP, INC.; and
CAPITAL DEFEASANCE GROUP, LLC,

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE BOSTON CONSULTING GROUP, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REQUEST FOR ORAL ARGUMENT

Defendant The Boston Consulting Group, Inc. ("BCG") submits this memorandum in support of its Motion for Judgment on the Pleadings and Request for Oral Argument.

### STATEMENT OF THE CASE

**A.    Background**

In 2005, Summit Partners, L.P. ("Summit"), a private equity firm, began exploring a possible investment in plaintiff Commercial Defeasance, LLC ("CD"), a defeasance consulting company. Am. Compl. ¶ 4.[1] CD agreed to provide Summit with information necessary to conduct due diligence under a confidentiality agreement between CD and Summit ("CD-Summit

---

[1] BCG accepts as true for the purposes of this motion, as it must on a motion for judgment on the pleadings, the well-pleaded factual allegations of the Amended Complaint, and all inferences reasonably drawn from them. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d. 581, 591 (4th Cir. 2004). BCG otherwise expressly denies the truth of those allegations beyond any facts admitted in its Answer.

Agreement"). Am. Compl. ¶ 5. In December 2005, Summit engaged BCG to provide consulting services related to Summit's potential investment in CD. Am. Compl. ¶ 42. Summit and BCG entered into a separate confidentiality agreement ("Summit-BCG Agreement"), under which Summit and CD provided BCG with information necessary to aid Summit in evaluating its possible investment in CD. Am. Compl. ¶¶ 7, 44 & 57. BCG completed its analysis and provided a report to Summit at the end of December. Am. Compl. ¶ 61.

Defendant Greg Stranger ("Stranger") was a BCG employee assigned to work on the Summit project. Am. Compl. ¶ 55. In late April 2006, Stranger formed defendant Capital Defeasance Group, LLC ("CDG"). Am. Compl. ¶ 75. CDG is a defeasance consulting business. Am. Compl. ¶ 78. CD alleges that Stranger used confidential information obtained during the due diligence project to form and operate CDG. Am. Compl. ¶ 10-11.

### B. CD's Claim Against BCG for Breach of Fiduciary Duty

In October 2006, CD brought suit against Stranger in this Court. CD amended its complaint in March 2007 to include BCG and CDG as defendants. CD's Amended Complaint asserts several claims against BCG, including Count Three, which alleges that BCG owed CD a fiduciary duty and violated that duty. Am. Compl. ¶ 129 & 131. In support of its claim for breach of fiduciary duty, CD asserts that a fiduciary duty arose by virtue of "BCG's consulting relationship with Summit". Am. Compl. ¶ 129. CD claims to have "reposed special confidence in ... BCG" (Am. Compl. ¶ 130), and also claims to have suffered unspecified harm and damages as a result of BCG's actions (See Am. Compl. ¶ 133, reading "cause" as "result").

CD further asserts that CD was an intended beneficiary of the Summit-BCG Agreement (Am. Compl. ¶¶ 49, 129 & 165), and that CD provided its confidential material to BCG "[b]ased

on the representations, covenants and prohibitions of the [Summit-BCG] Agreement..." (Am. Compl. ¶ 57).

Summit's access to CD's confidential material was governed by the CD-Summit Agreement, under which Summit agreed to disclose CD's information only to Summit's "representatives". Am. Compl. ¶ 40. It is undisputed that BCG was acting as Summit's "advisor and consultant" in performing the services BCG performed in December 2005. Am. Compl. ¶ 42. It is also undisputed that CD relied upon the Summit-BCG Agreement when it "provided BCG and Stranger with" the due diligence materials. Am. Compl. ¶ 57.

## ARGUMENT

Rule 12(c) motions are reviewed under the same standards applicable to Rule 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, facts in the Amended Complaint must be construed in the light most favorable to CD, but the Court need not accept any unwarranted inferences, unreasonable conclusions, or arguments therein. Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp., 213 F.3d 175, 180 (4th Cir. 2000). CD's obligation to provide the grounds for its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965. The Amended Complaint fails to establish a right to relief for breach of fiduciary duty.

## I. BCG DID NOT OWE CD A FIDUCIARY DUTY BECAUSE THE COMPANIES WERE AT ALL TIMES INDEPENDENT BUSINESSES DEALING AT ARM'S LENGTH

Because CD and BCG dealt at arm's length in a conventional business transaction, BCG, as a matter of law, did not owe CD any fiduciary duty. For a breach of fiduciary duty to exist,

there must first be a fiduciary relationship between the parties. Harrold v. Dowd, 561 S.E.2d 914, 919 (N.C. Ct. App. 2002). In North Carolina, as a matter of law, "no fiduciary relationship exists between mutually interdependent businesses with equal bargaining positions who dealt at arms-length." Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999) (citing Tin Originals, Inc. v. Colonial Tin Works, Inc., 391 S.E.2d 831 (N.C. Ct. App. 1990)); accord Smith v. GMAC Mortgage Corp., 2007 U.S. Dist. LEXIS 66001 at *15 (W.D.N.C. 2007) (unpublished) (copy attached) (citing Rhone-Poulenc, 73 F. Supp. 2d at 546). Fiduciary obligations are simply "out of place in a relationship involving two business entities pursuing their own business interests, which of course do not always coincide." Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 348 (4th Cir. 1998).

Courts have regularly declined to recognize fiduciary relationships even between businesses with intimate relations of trust and confidence. Id. (franchisor was not a fiduciary of franchisees, and contract claim was improperly recast as tort claims); Cardiovascular Diagnostics v. Boehringer Mannheim Corp., 985 F. Supp. 615, 619-620 (E.D.N.C. 1997) (exclusive licensee bound by confidentiality agreement did not owe licensor fiduciary duty); Harrold v. Dowd, 561 S.E.2d at 919-20 (accountant-client relationship is not *per se* fiduciary); Tin Originals, 391 S.E.2d at 833 (manufacturer did not owe exclusive distributor a fiduciary duty); Stone v. McClam, 257 S.E.2d 78, 84 (N.C. Ct. App. 1979) (debtor-creditor relationship does not give rise to fiduciary duty). If fiduciary relationships do not arise among *inter*dependent businesses like the licensor and exclusive licensee in Cardiovascular Diagnostics, they certainly do not arise between two businesses "who at all times remained *independent* businesses and dealt at arms length...." Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 405

- 4 -

(M.D.N.C. 2003) (emphasis in original) (company receiving confidential and proprietary information under a non-disclosure agreement was not a fiduciary).

BCG, the "advisor and consultant" (Am. Compl. ¶¶ 41-42) to Summit, a party engaged in arm's length negotiations with CD, could not owe CD a fiduciary relationship. CD alleges, and therefore admits, that CD dealt with BCG as Summit's "advisor and consultant" (Am. Compl. ¶¶ 41-42), and that CD relied on BCG's contractual relationship with Summit in deciding to provide its materials to BCG (Am. Compl. ¶ 57). Further, CD alleges that its own relationship with Summit was "governed by a confidentiality agreement between the parties." Am. Compl. ¶ 5. CD has not alleged any facts – and there are none – that could support a claim that CD did not have equal bargaining power in relation to Summit, that CD and Summit did not deal at arm's length, or that CD relied on a special trust relationship it had developed with BCG. If businesses sharing confidential information in contemplation of a joint venture do not have a fiduciary relationship, then the independent "advisor and consultant" to a client engaged in negotiations with a third party cannot owe a fiduciary duty to that third party. Cf. Volumetrics, 243 F. Supp. 2d at 404-09. And if accountants do not owe their *own* client a fiduciary duty as a matter of law in advising the client on a merger, then business consultants cannot owe a fiduciary duty to one with whom the consultants' client is engaged in negotiation. Cf. Harrold, 561 S.E.2d at 919-20. BCG and CD did not have a fiduciary relationship as a matter of law and, accordingly, BCG's motion should be allowed.

## II. BCG DID NOT OWE CD A FIDUCIARY DUTY BECAUSE BCG DID NOT EXERT THE REQUIRED DOMINATION AND INFLUENCE OVER CD'S AFFAIRS.

Because BCG did not dominate or influence CD through its receipt or analysis of the evaluation materials, BCG could not owe CD a fiduciary duty. Even if CD's breach of fiduciary duty claim were not foreclosed as a matter of law, there is no allegation in the Amended

Complaint that BCG exerted "domination and influence" over CD.[2] Under North Carolina law, a fiduciary relationship exists in fact in any case "in which there is confidence reposed on one side, and *resulting domination and influence on the other.*" Dalton v. Camp, 548 S.E.2d 704, 707-08 (N.C. 2001) (emphasis in original, internal quotations omitted). The element of domination and influence is necessary for a claim for breach of fiduciary duty. Id. at 708 (domination and influence is an "essential component of any fiduciary relationship"). Moreover, the bar for establishing the required domination and influence is high. "Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." Meineke, 73 F. Supp. 2d at 546.

The sharing of confidential information under a confidentiality agreement does not, without more, satisfy the domination and influence requirement. See S. Atl. P'Ship of Tenn. v. Riese, 284 F.3d 518, 533 (4th Cir. 2002) ("North Carolina is reluctant to impose 'extra-contractual fiduciary obligations' in the context of general commercial contracts; thus, even when parties to an arms-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other.") (citing Tin Originals, 391 S.E.2d at 833). In Cardiovascular Diagnostics, the plaintiff medical technology company shared its proprietary technology with the defendant under an exclusive licensing agreement. 985 F. Supp. at 616-17. The defendant later obtained patents for similar technology from a third party and informed the plaintiff that the licensed technology infringed their newly obtained patents. Id. at 617. The plaintiff filed suit, claiming that the defendant misappropriated its technology and

---

[2] Although the existence of a fiduciary duty is often a question of fact, it "may be couched as a matter of law, and as such, … a fiduciary relationship may not necessarily be present even though a Plaintiff has alleged 'special circumstances' resulting in one party having 'superiority and influence' over the other." Volumetrics, 243 F. Supp. 2d at 405. For example, no fiduciary relationship exists between interdependent businesses with equal bargaining positions who deal at arm's length. Id.

trade secrets in violation of the confidentiality agreement. Id. Ruling on a motion for judgment on the pleadings under Rule 12(c), the court found that a term in the confidentiality agreement could not be avoided for constructive fraud, because the defendant did not owe the plaintiff a fiduciary duty. Id. at 620.

Similarly, in Volumetrics, the defendant performed a due diligence investigation of the plaintiff medical technology company under a non-disclosure agreement in contemplation of a joint venture with, *or purchase of*, the plaintiff. Volumetrics, 243 F. Supp. 2d at 390-91. After substantial work on developing a joint project, and assurances from the defendant that it intended to go forward with the joint project, the defendant's parent company began acquisition of another company that had a division developing technology similar to the plaintiff's. Id. at 392. The defendant repudiated the joint project with the plaintiff, which was forced to terminate all but one employee. Id. at 393. The court granted the defendant's motion for summary judgment on the claim for breach of fiduciary duty and breach of an implied joint-venture agreement, rejecting nine separate reasons offered by the plaintiff to show a fiduciary relationship existed in fact. The court found, *inter alia*, that the plaintiff's vulnerable financial position and the sharing of proprietary and confidential information under a non-disclosure agreement failed to establish the requisite domination and influence. Id. at 405-06. Even the defendant's substantial involvement in the plaintiff's work schedules, compensation decisions, budget and hiring was not sufficient to establish a fiduciary duty. Id. at 406-08.

CD has not alleged any facts – there are none – to show that BCG "held all the cards" or exercised the requisite "domination and influence." CD's fiduciary duty claim rests on nothing more than the allegation that CD gave BCG access to information claimed to be confidential.

That is simply insufficient to establish a fiduciary duty under North Carolina law.[3] Even if BCG had access to information of CD, BCG has not alleged any domination or influence over CD's affairs as a result. BCG had *no* control over CD's business affairs, and CD has not alleged otherwise. Indeed, under the CD-Summit Agreement, BCG was not even allowed to contact CD directly without prior Summit approval. See Am. Compl. Ex. A ¶ 6. The courts in Cardiovascular and Volumetrics did not find the required domination and influence where the defendants had considerably more influence in the business affairs of the plaintiffs. Without the required domination and influence over CD's affairs, BCG could not have owed CD a fiduciary duty. Accordingly, CD's breach of fiduciary duty claim must fail.[4]

## CONCLUSION

For all the foregoing reasons, BCG's motion for judgment on the pleadings should be allowed and judgment should enter for BCG on the pleadings on Count Three of CD's Amended Complaint.

---

[3] CD's Amended Complaint contains the conclusory assertion that BCG was "bound by equity and good conscience to act in good faith and with due regard to the interests of Commercial Defeasance." Am. Compl. ¶ 130. This assertion does nothing to advance CD's claim for breach of fiduciary duty. In Dalton, the court noted that "Camp was therefore bound to act in good faith and with due regard to the interests of Dalton" but that "such circumstances ... are inadequate to establish Camp's obligations as fiduciary in nature." Dalton, 548 S.E.2d at 708. "No evidence suggests that his position in the workplace resulted in domination and influence on the other...." Id. (internal quotations omitted). As noted above, the existence of a fiduciary duty *requires* domination and influence.

[4] During Local Rule 7.1(A) conferences, counsel for CD suggested that this motion might be barred by the law of the case doctrine, in light of this Court's September 27, 2007 Order adopting the Magistrate Judge's June 21, 2007 Memorandum and Recommendation recommending denial of Defendant Stranger's April 27, 2007 Motion to Dismiss Plaintiff Commercial Defeasance, LLC's Amended Complaint. Neither Stranger's Motion nor the Memorandum recommending its denial discussed the fiduciary duty claim CD asserts against BCG, and there has been no ruling as to that claim. Moreover, even if the ruling on Stranger's Motion were viewed as applicable to CD's fiduciary duty claim against BCG, a denial of a motion to dismiss is not an order to which law of the case attaches. Plotkin v. Lehman, 1999 U.S. App. LEXIS 8340 at *2 (4th Cir. 1999) (per curiam) (unpublished) (copy attached) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." (quoting Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994))).

_____
John H. Cobb
State Bar No.: 17051
HELMS MULLISS & WICKER
201 North Tryon Street
Charlotte, North Carolina 28231
Telephone: (704) 343-2000

Dated: November 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2007, I caused a copy of the foregoing Motion to be served by first-class U.S. mail, postage prepaid, and facsimile to the following:

Attorneys for Plaintiff Commercial Defeasance, LLC:

Scott M. Tyler
Moore & Van Allen, PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003

Thomas C. Frongillo
Weil, Gotshal & Manges LLP
100 Federal Street
Boston, Massachusetts 02110

Attorneys for Defendants Greg Stranger and Capital Defeasance Group, LLC:

Eric D. Welsh
Parker Poe Adams & Bernstein, LLP
Three Wachovia Center
410 S. Tryon Street, Suite 3000
Charlotte, North Carolina 28202

Brian D. Gwitt
Damon & Morey LLP
1000 Cathedral Place
298 Main Street
Buffalo, New York 14202

_____
John H. Cobb