**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**Civil Action No. 3:06 CV 422-MRK-DCK**

COMMERCIAL DEFEASANCE, LLC,

Plaintiff,

v.

GREG STRANGER;
THE BOSTON CONSULTING GROUP, INC.; and
CAPITAL DEFEASANCE GROUP, LLC,

Defendants.

# DEFENDANT THE BOSTON CONSULTING GROUP, INC.'S OBJECTION TO MAGISTRATE'S MEMORANDUM AND RECOMMENDATION REGARDING BCG'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REQUEST FOR ORAL ARGUMENT

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), defendant The Boston Consulting Group, Inc. ("BCG") objects to Magistrate Judge Keesler's recommendation that the Court deny BCG's Motion for Judgment on the Pleadings on Count Three of plaintiff Commercial Defeasance's ("CD") Amended Complaint, which asserts a claim for breach of fiduciary duty (the "Recommendation").

As explained below, the Recommendation should be rejected and BCG's motion should be allowed because, among other things, (a) the Recommendation fails to analyze BCG's arguments on the merits, wrongly relying on a prior decision on a motion filed by another party with a different posture; and (b) as CD has argued in another case pending in this District, North

Carolina law forecloses a fiduciary duty claim where, as here, the relationship between the parties is governed by a contract.

## I. SUMMARY OF ARGUMENT

Judgment should enter for BCG on CD's breach of fiduciary duty claim because North Carolina law is clear that, where there is a contractual relationship between parties who have dealt at arm's length, as is the case here, there is no fiduciary relationship. Indeed, in another case pending in this District, CD admits that this is the law in North Carolina and also that North Carolina law prohibits plaintiffs from recasting claims for breach of contract as claims for breach of fiduciary duty or other tort claims. Judgment should also enter for BCG because although CD's Amended Complaint alleges a "comprehensive" contractual relationship between CD and BCG, it is devoid of any allegation of domination and influence, which is a required of element of a fiduciary duty claim under North Carolina law.

The Magistrate, nevertheless, recommends that BCG's motion be denied, relying on his prior Memorandum and Recommendation on a motion by defendant Greg Stranger to dismiss CD's fiduciary duty claim against Stranger (the "Stranger Recommendation"), which the Court (Conrad, J.) approved without any objection from Stranger. The problem is that BCG and Stranger occupy very different positions with respect to the fiduciary duties alleged by CD. As shown in BCG's moving papers, the difference is profound. CD alleges the existence of a "comprehensive" contractual relationship involving BCG that addresses the very subject matter of the claim, while in contrast Stranger had no contractual relationship with CD or its majority owner. More specifically, CD alleges it is an intended beneficiary of BCG's contract with Summit Partners, the private equity firm that retained BCG to perform due diligence in

connection with Summit's investment in CD.[1] In addition, the Stranger Recommendation was based on a legal standard that the United States Supreme Court struck down in favor of a more stringent one before BCG filed its motion.

As a matter of North Carolina law, CD cannot maintain a fiduciary duty claim because it has also asserted a contract claim based on the same alleged facts. Accordingly, the Magistrate erred in recommending that the Court deny BCG's motion. BCG, therefore, respectfully requests that this Honorable Court reject the Recommendation, grant BCG's motion, and order judgment to be entered in BCG's favor on Count Three of the Amended Complaint.

## II. BACKGROUND

### A. The Allegations In The Amended Complaint

In December 2005, Summit Partners, L.P., a private-equity firm, retained BCG to provide consulting services related to Summit's evaluation of a possible investment in CD. (Am. Compl. ¶ 42.) As part of that engagement, BCG and Summit entered into a confidentiality agreement, which prohibited BCG from disclosing any evaluation material.[2] (Am. Compl. ¶¶ 7, 44 & 45.) The Amended Complaint alleges that CD was an intended beneficiary of BCG's contract with Summit (*id.* ¶ 49), and that the Summit-BCG contract was a "comprehensive document replete with provisions designed to safeguard" CD's information (*see* Memorandum of CD in Opposition to BCG's Motion (filed Dec. 14, 2007, Docket No. 92) at 6; *see also* Am. Compl. ¶¶ 50–54, 95 & 96). BCG completed its analysis and sent a report to Summit on December 29, 2005. (Am. Compl. ¶ 61.) In April 2006, Stranger, a BCG employee who had worked on the Summit project, formed Capital Defeasance Group, LLC ("CDG"). (*Id.* ¶ 75.) CD asserts, *inter*

[1] As alleged in the Amended Complaint, Summit completed its investment and now holds the controlling interest in CD. (*See* Am. Compl. ¶ 63.)

[2] As in its briefs in support of its motion for judgment on the pleadings, BCG treats CD's allegations as true for purposes of the motion only. BCG otherwise expressly denies the truth of those allegations beyond any facts admitted in BCG's Answer.

*alia*, that Stranger misappropriated CD's trade secrets and has used them to run CDG in competition with CD.

**B. Procedural History**

On October 4, 2006, CD began this litigation by filing under seal a complaint against Stranger. BCG was not named as a defendant in that complaint. CD filed an Amended Complaint on March 13, 2007, which added BCG and CDG as defendants. Among the claims CD asserted against BCG (and also Stranger) were claims for breach of fiduciary duty and breach of contract. BCG was not given access to the sealed docket until April 3, 2007. Seven days later, Stranger and CDG each moved to dismiss the claims against them, asserting, *inter alia*, lack of personal jurisdiction and that Stranger was not a fiduciary to CD. BCG was not a party to Stranger's motion.

Magistrate Judge Keesler heard oral argument on Stranger's motion on May 15, 2007, and on June 20, 2007, recommended that the Court deny the motion. That recommendation was focused almost entirely on issues relating to personal jurisdiction, which was the primary thrust of Stranger's motion. The Magistrate devoted only four sentences to a discussion of Stranger's alleged status as a fiduciary:

> Defendant Stranger also contends that Count 3 should be dismissed for failure to state a claim because Commercial fails to plead any cognizable fiduciary duty because there was no "special confidence" between Commercial and Stranger. Again, Commercial responds that the existence of a fiduciary duty is inherently fact-intensive and not appropriate for dismissal under 12(b)(6). See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), aff'd as modified sub nom, Republican Party of N.C. v. N.C. State Bd. Of Elections, 27 F.3d 563 (4th Cir. 1994). The undersigned agrees and determines that it would be premature for the Court to dismiss Commercial's claims at this stage of the litigation.

Stranger Recommendation at 20-21.[3] Neither Stranger nor CDG objected to that recommendation, and Judge Conrad accepted it on September 27, 2007.

On November 21, 2007, BCG moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings with respect to CD's claim in Count Three of the Amended Complaint that BCG owed CD a fiduciary duty. CD opposed the motion. On March 3, 2008, Magistrate Judge Keesler recommended that the Court deny BCG's motion. In doing so, the Magistrate quoted the four sentences on fiduciary status in the Stranger Recommendation, and concluded:

> Considering that the undersigned has previously recommended in this case that the existence of a fiduciary relationship or duty between [CD] and Stranger was a fact-intensive inquiry not appropriate for 12(b)(6) dismissal, and that the recommendation being approved by the Honorable Robert J. Conrad, Jr., the undersigned is not inclined to recommend now that the Court effectively reverse itself and find that there was no fiduciary duty, as a matter of law, between BCG and [CD].

Recommendation at 7. The Magistrate added that BCG had not presented "compelling reasoning to distinguish its position as an alleged fiduciary from Stranger's, nor has BCG convinced the Court that it should reconsider its earlier ruling." *Id.*

## III. ARGUMENT

### A. The Magistrate's Decision Is Subject to *De Novo* Review.

The Court's review of the Recommendation is subject to a non-deferential *de novo* standard. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "*De novo* review allows [the court] to conduct an overall inquiry into the sufficiency of the complaint to determine

[3] *Republican Party of N.C.* involved an Equal Protection claim of vote dilution by political gerrymandering and did not involve a fiduciary duty claim.

whether the [plaintiffs] have stated a claim upon which relief may be granted. … These steps help weed out insubstantial … claims without subjecting the defendant to the burdens of pretrial preparations." *Jenkins v. Medford*, 119 F.3d 1156, 1160 (4th Cir. 1997).

Rule 12(c) motions are reviewed under the same standards applicable to motions under Rule 12(b)(6). *See Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Although the facts alleged in the Amended Complaint must be construed in the light most favorable to CD, the Court need not accept any unwarranted inferences, unreasonable conclusions, or arguments therein. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). CD's obligation to provide the grounds for its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1964) (emphasis added, other internal quotations omitted). But the factual allegations must be enough to raise a right to relief above the speculative level. *See Bell Atlantic*, 127 S. Ct. at 1965.

**B. The Decision on Stranger's Motion Was Not Dispositive of BCG's Motion.**

The Stranger Recommendation, as approved by Judge Conrad, was not and is not law of the case; that doctrine "requires a final judgment to sustain the application of the rule of the law of the case just as it does for the kindred rule of *res judicata*." *United States v. United States Smelter Refining & Min. Co.*, 339 U.S. 186, 199 (1950); *Choice Hotels Int'l v. Patel*, 236 Fed. Appx. 868, 870 (4th Cir. 2007) (quoting *U.S. Smelter Refining*) (attached hereto as Exhibit 3A); *Plotkin v. Lehman*, 1999 U.S. App. LEXIS 8340 at *2 (4th Cir. 1999) (per curiam) (unpublished) ("[D]enials of motions to dismiss . . . do not constitute the law of the case." (quoting *Perez-Ruiz*

*v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)) (Exhibit B to BCG's Memorandum, attached hereto as Exhibit 1)); *see also Washington v. Digital Equipment Corp.*, 1992 U.S. App. LEXIS 16843 at *20 (4th Cir. 1992) (unpublished) ("The determination *not* to grant summary judgment is not the kind of final judgment of an issue that requires application of the law of the case rule. A decision not to grant summary judgment does not resolve any factual or legal issue, and is not appealable as a final order.") (attached hereto as Exhibit 3B).[4]

Moreover, the Stranger Recommendation is inapplicable to BCG's Rule 12(c) motion for two reasons. First, the Magistrate's conclusion that BCG and Stranger occupy the same "position" is not supported by the allegations in the Amended Complaint. CD alleges that Summit and BCG entered into the contract upon which CD relies, but CD makes no such allegation as to Stranger. Thus, Stranger argued, in support of his motion to dismiss, that he could not be considered a fiduciary because he was not a party to the contract between BCG and Summit as to which CD alleges it is a third-party beneficiary.[5] BCG's argument in support of its Rule 12(c) motion is the polar opposite—that CD's allegation that it was an intended beneficiary

---

4 Even if Judge Conrad's acceptance of the Magistrate's Recommendation on Stranger's Motion is somehow applicable to BCG, this Court may reconsider that order for *any* reason. *See Washington*, 1992 App. LEXIS 16843 at *20 ("It is well accepted that no more justification need be offered to support a trial judge's reversal of his or another district judge's negative ruling on a summary judgment motion than the mere assertion that the judge changed his or her mind, or disagreed with the conclusion of his or her predecessor."); *Cale v. Johnson*, 861 F.2d 943, 948 (6th Cir. 1988) ("We need not decide whether the new evidence considered by the district court meets some threshold test of sufficiency, however, as the Second Circuit has made clear. The district court does not have to rely on new evidence; if the demands of justice require, *it may simply change its mind*.") (emphasis added) (rejecting argument that two previous denials of summary judgment precluded eventual grant of summary judgment); *Corporacion De Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2nd Cir. 1979) ( "The first judge always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court. *A fortiori*, if the first judge can change his mind after denying summary judgment, and change his ruling, a second judge should have and does have the power to do so as well.").

5 *See* Defendant Greg Stranger's Memorandum of Points and Authorities (filed Nov. 16, 2006) at 15 ("between [CD] and Mr. Stranger is an attenuated chain of three contractual relationships, none of which are directly between [CD] and Mr. Stranger."); Defendant Greg Stranger's Memorandum of Points and Authorities (filed Dec. 4, 2006) at 21 ("Indeed, each link in the contractual chain between Plaintiff and Mr. Stranger poses additional problems for Plaintiff's fiduciary duty theory."); Defendant Stranger's Memorandum of Points and Authorities (filed Apr. 10, 2007) at 20 ("Instead, between [CD] and Mr. Stranger is an attenuated chain of three contractual relationships, none of which are directly between [CD] and Mr. Stranger...."); Reply in Support of Greg Stranger's Motion to Dismiss (filed May 7, 2007) at 22 ("[CD] must do more to establish venue than point to the execution or performance of a contract to which Mr. Stranger was not a party....") and 25 ("Indeed, each link in the contractual chain between [CD] and Mr. Stranger poses additional problems for Plaintiff's fiduciary theory.").

of the contract between BCG and Summit alleges a contract claim which precludes a tort claim for breach of fiduciary duty.

Second, the Stranger Recommendation was based on a now rejected standard for deciding Rule 12(b)(6) motions. In ruling on Stranger's motion, the Magistrate inquired whether "the plaintiff can prove no set of facts which would support his claim and entitle him to relief." Stranger Recommendation at 6 & 20. In May 2007, before BCG filed its motion, the Supreme Court issued its landmark decision *Bell Atlantic Corp. v. Twombly*, which retired the standard applied by the Magistrate in favor of a more stringent one in which a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."[6] 127 S.Ct. 1995, 1965 (2007).

The Magistrate noted this heightened pleading standard in the Recommendation, but did not apply it. The Magistrate stated without explanation that CD's allegations are sufficient under the *Bell Atlantic* standard, but he did not explain how any facts alleged in the Amended Complaint elevate CD's request for relief above the speculative level. Recommendation at 7-8. Aside from the erroneous conclusion that the existence of a fiduciary duty "will involve a fact-intensive inquiry and therefore is not subject to a judgment on the pleadings,"[7] the only reason stated by the Magistrate for recommending denial of BCG's motion was that he was "not inclined to recommend now that the Court effectively reverse itself." *Id.* at 7. Thus, the Recommendation should be rejected because it rests explicitly on the Stranger Recommendation, which was based on a pleading standard that is no longer applicable.

---

6 Noting that "a good many judges and commentators have balked at taking the literal terms of the ["no set of facts"] passage as a pleading standard", the Court concluded that the "'no set of facts' language has been questioned, criticized, and explained away long enough." *Bell Atlantic*, 127 S. Ct. at 1969. The Court was clear that the pleading standard was not appropriate: "The ["no set of facts"] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint" *Id.* (emphasis added).

7 BCG's Memorandum and BCG's Reply cited numerous cases holding that this is an issue of law, not fact. BCG further argued that an inquiry into the facts would not avail CD, because CD had failed to plead—and had contradicted with its pleadings—an essential element of any fiduciary relationship-in-fact: domination and influence. The Magistrate did not address any of those arguments.

## C. As a Matter of Law, BCG Had No Fiduciary Duty to CD.

For the reasons set forth in BCG's opening and reply briefs (copies attached as Exhibits 1 and 2), consideration of BCG's motion on its merits would have shown, as a matter of law, that BCG did not owe CD any fiduciary duty. Summarized, those reasons are:

### 1. BCG Was Retained To Advise Summit Which Stood At Arm's Length From CD.

The question whether BCG and CD had a fiduciary relationship is not a "fact-intensive inquiry" because such a relationship is foreclosed under the law of North Carolina, where the courts have held repeatedly that no fiduciary relationship exists, as a matter of law, between independent businesses dealing with one another at arm's length. *E.g.*, *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 348 (4th Cir. 1998); *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999) (citing *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 391 S.E.2d 831 (N.C. Ct. App. 199)); *accord Smith v. GMAC Mortgage Corp.*, 2007 U.S. Dist. LEXIS 66001 at *15 (W.D.N.C. 2007) (unpublished) (citing *Rhone-Poulenc*, 73 F. Supp. 2d at 546) (Exhibit A to BCG's Memorandum, attached hereto as Exhibit 1). This principle holds true even where the businesses have relationships of trust or confidence. *E.g.*, *Meineke*, 155 F.3d at 348 (franchisor-franchisees); *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 405 (M.D.N.C. 2003) (businesses sharing confidential information under confidentiality agreement in contemplation of joint venture or acquisition); *Cardiovascular Diagnostics v. Boehringer Mannheim Corp.*, 985 F. Supp. 615, 619-20 (E.D.N.C. 1997) (licensor-exclusive licensee); *Harrold v. Dowd*, 561 S.E.2d 914, 919-20 (N.C. Ct. App. 2002) (accountant-client); *Tin Originals*, 391 S.E.2d at 833 (manufacturer-exclusive distributor).

BCG was at all relevant times an advisor and consultant to Summit (not CD) operating under contract with Summit. Summit, in turn, was an independent business operating under a contract with CD concerning a possible investment in CD. The Amended Complaint neither alleges explicitly nor sets forth facts to support an inference that the contracting parties were not independent businesses dealing with one another at arm's length. As a matter of law, therefore, BCG did not owe CD a fiduciary duty and no "fact-intensive inquiry" was or is required.

**2. CD Did Not Plead (As It Must) Domination and Influence.**

BCG's motion should be allowed because CD failed to plead "domination and influence," an essential element of a fiduciary duty claim. *See Dalton v. Camp*, 548 S.E.2d 704, 707-08 (N.C. 2001); *see also Meineke*, 155 F.3d at 348 ("Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen."). CD has not alleged any special circumstance or domination and influence, and no such inference can fairly be drawn from anything in the Amended Complaint. To the contrary, CD has flatly contradicted any claim of domination and influence and has not alleged any special vulnerability resulting from its relationship to BCG. Indeed, CD has alleged that it enjoyed strong, comprehensive contractual protections against any misuse of its information. (*See* Am. Compl. ¶¶ 7, 45, 48, 49, 50-54, 95, 129, 165, 171.) Under the *Bell Atlantic* standard, a claim for relief may only be supported by a "set of facts *consistent with the allegations in the complaint*." *Bell Atlantic*, 127 S. Ct. at 1969 (emphasis added). A finding of the domination and influence required to support a fiduciary relationship would be inconsistent with the contractual protections CD has alleged and CD's fiduciary duty claim fails on the pleadings as a matter of law.

### 3. North Carolina Law Disfavors Attempts to Recast Contract Claims as Tort Claims.

At the heart of CD's fiduciary duty claim against BCG is the allegation that BCG was bound by contract to protect CD's information from disclosure or misuse. However, "North Carolina is reluctant to impose 'extra-contractual fiduciary obligations' in the context of general commercial contracts…." *S. Atl. P'Ship of Tenn. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002); *Meineke*, 155 F.3d at 347 ("'parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.'"). This applies equally to the exchange of information under a confidentiality agreement in pursuit of the sale of a business. *See Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 406 (M.D.N.C. 2003). Indeed, an "attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim" is "inconsistent … with North Carolina law." *Meineke*, 155 F.3d at 346. That is precisely what CD has attempted. It has not alleged any conduct by BCG that could constitute a breach of any duty that CD has not also alleged as a breach of contract. *All* of CD's factual allegations of wrong-doing by BCG are covered in their entirety by CD's contract claim. Under North Carolina law, CD's extra-contractual fiduciary duty claim is inconsistent with its breach of contract claim and must be rejected.

### 4. CD Has Argued Against a Contract-Based Fiduciary Duty Claim In Another Case Pending In This District and Should Not Be Heard To Argue To The Contrary Here.

In *Larkey-Wrigley, LLC v. Commercial Defeasance*, LLC, C.A. No. 3:07-cv-376-RJC-CH (W.D.N.C.), CD argued in support of its motion to dismiss the plaintiff's fiduciary duty claim that CD was not a fiduciary because CD and the plaintiff were independent businesses dealing at arm's length:

> Absent "special circumstances," where one party has "superiority and influence" over the other, "no fiduciary relationship exists between mutually interdependent businesses with equal bargaining positions who dealt at arms-length." *Rhone-Poulenc Argo*, 73 F. Supp.2d at 545. In other words, "North Carolina is reluctant to impose 'extra-contractual fiduciary obligations' in the context of general commercial contracts; thus, even when the parties to an arms-length transaction repose confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other." *South Atlantic Ltd. P'ship of Tenn. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002).
>
> * * *
>
> Here, the parties were sophisticated entities in equal bargaining positions that entered into an arms-length contractual relationship. Each side had its own counsel. Defendants were not financial advisors and did not negotiate on Plaintiff's behalf. As a matter of law, such a relationship is insufficient to establish a fiduciary duty, and Plaintiff's claims for breach of fiduciary duty and constructive fraud must be dismissed.

Memorandum in Support of Defendants' Motion to Dismiss at 27–29, *Larkey-Wrigley*, No. 19 (filed Nov. 15, 2007) (attached hereto as Exhibit 4).

CD also argued that the plaintiff's fiduciary duty claim could not survive because it was premised on the same facts at issue in the plaintiff's breach of contract claim:

> Plaintiff's breach of fiduciary duty and constructive fraud claims should be dismissed because they are premised on the very same factual allegations as the breach of contract claim. *North Carolina law strictly circumscribes the conditions under which a contract dispute can be transformed into a tort action, and those requirements cannot be met in this case. A tort claim can only survive where it is "identifiable" and distinct from the primary breach of contract claim. Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345-46 (4th Cir. 1998). Thus, "mere failure to carry out a promise in contract ... does not support a tort action." *Vanwyk Textile Sys. v. Zimmer Mach. Am.*, 994 F. Supp. 350, 361-62 (W.D.N.C. 1997) (citing *Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994)).
>
> * * *
>
> The allegations offered to establish the Plaintiff's contract claim ... are the same as those offered as the basis for the breach of fiduciary duty claim.... This Court has ruled on numerous occasions, under similar circumstances, that there can be no tort claims where there are no duties between the parties except those created by contract. *See US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, 2006 WL 1367383, at *2 (W.D.N.C. May 15, 2006) (J. Mullen); *Lowe's Cos., Inc. v. Pacific Research Group, Inc.*, No. 5:05CV275-C, slip op. at 3 (W.D.N.C. Mar. 29, 2007)

(J. Conrad); *Varnell Struck & Assocs., Inc. v. Lowe's Cos., Inc.*, No. 5:06CV68-C, slip op. at 7 (W.D.N.C. Jan 10, 2007) (J. Horn M&R).

*Id.* at 31 (emphasis added; footnotes and citations to pleadings omitted).

CD obviously cannot have it both ways. CD's Amended Complaint does not allege any fiduciary duty "identifiable" and distinct from CD's breach of contract claim. CD's admission that North Carolina law does not recognize a contract-based fiduciary duty claim precludes CD from asserting such a claim against BCG and CD's fiduciary duty claim against BCG should be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, the Recommendation should not be adopted, BCG's motion for judgment on the pleadings should be allowed and judgment should enter for BCG on the pleadings on Count Three of CD's Amended Complaint.

Dated: March 20, 2008

John H. Cobb
NC Bar No.: 17051
Donald P. Renaldo, II
*Admitted Pro Hac Vice*
HELMS MULLISS & WICKER
201 North Tryon Street
Charlotte, North Carolina 28202
Telephone: (704) 343-2000
Facsimile: (704) 343-2300
jack.cobb@hmw.com
donald.renaldo@hmw.com

Harry T. Daniels
John J. Butts
Caroline E. Kane
*Admitted Pro Hac Vice*
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6669
Facsimile: (617) 523-5000
harry.daniels@wilmerhale.com
john.butts@wilmerhale.com
caroline.kane@wilmerhale.com

*Attorneys for Defendant*
*The Boston Consulting Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2008, I served a copy of the foregoing OBJECTION TO MAGISTRATE'S MEMORANDUM AND RECOMMENDATION REGARDING BCG'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REQUEST FOR ORAL ARGUMENT via first-class U.S. mail, postage prepaid, and via the court's CM/ECF electronic notification to:

Attorneys for Plaintiff Commercial Defeasance, LLC:

Scott M. Tyler
Moore & Van Allen, PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003

Thomas C. Frongillo
Weil, Gotshal & Manges LLP
100 Federal Street
Boston, Massachusetts 02110

Attorneys for Defendants Greg Stranger and Capital Defeasance Group, LLC:

Eric D. Welsh
Parker Poe Adams & Bernstein, LLP
Three Wachovia Center
410 S. Tryon Street, Suite 3000
Charlotte, North Carolina 28202

Brian D. Gwitt
Damon & Morey LLP
1000 Cathedral Place
298 Main Street
Buffalo, New York 14202

John H. Cobb