# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:06-CV-422-MKR-DCK

| | |
|---|---|
| COMMERCIAL DEFEASANCE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| GREG STRANGER, THE BOSTON ) | |
| CONSULTING GROUP, INC., and ) | |
| CAPITAL DEFEASANCE GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants Greg Stranger and Capital Defeasance Group, LLC's "Motion To Compel" (Document No. 103) and "Memorandum Of Law In Support Of Motion to Compel/Preclude" (Document No. 103-2), filed February 1, 2008; "Plaintiff's Memorandum in Opposition To Defendants' Motion To Compel / Preclude" (Document No. 107), filed February 19, 2008; "Reply Memorandum In Further Support Of Greg Stranger And Capital Defeasance Group, LLC's Motion to Compel/Preclude" (Document No. 110), filed February 29, 2008; and "Plaintiff's Surreply In Opposition To Defendants' Motion To Compel / Preclude" (Document No. 120), filed March 14, 2008. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and is now ripe for determination.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>grant in part and deny in part</u> Defendants' "Motion To Compel."

## I. FACTUAL AND PROCEDURAL BACKGROUND

Commercial Defeasance, LLC ("Commercial" or "Plaintiff") is a commercial mortgage-related services company formed and headquartered in Charlotte, North Carolina. Commercial is

one of a small number of companies nationwide specializing in facilitating the defeasance of securitized mortgage loans. In 2005, Summit Partners, L.P. ("Summit"), a private equity and venture capital firm, became interested in making a substantial investment in Commercial. Commercial agreed to provide Summit with its confidential, proprietary information and trade secrets (collectively, "trade secrets") to assist Summit's decision on whether to invest. The disclosures to Summit were governed by a confidentiality agreement between the parties designed to protect Commercial's trade secrets.

Summit retained The Boston Consulting Group, Inc. ("BCG"), a strategy and general management consulting firm, to perform an in-depth due diligence and analysis of Commercial. This analysis involved the review and investigation of Commercial's trade secrets. BCG and Summit entered into a confidentiality agreement to ensure the protection of Commercial's trade secrets. In that document, BCG agreed that the firm, including its representatives and employees, would not disclose Commercial's trade secrets or use them to Commercial's detriment.

BCG employed Greg Stranger ("Stranger") as a manager and assigned him to supervise the due diligence project related to Commercial. In his employment agreement with BCG, Stranger expressly agreed that (1) he would not disclose or use the confidential information of BCG's clients, and (2) he would not assist anyone engaged in or considering competition with any former BCG client. It is alleged that Stranger had no prior experience with or understanding of the commercial mortgage loan defeasance industry. In December 2005, Stranger led BCG's review of Commercial, including its trade secrets.

Stranger spent approximately three days in Charlotte, including two days at Commercial's headquarters, gathering information about the company. Stranger received a comprehensive tutorial

on the business, including debriefings by Commercial's executive management team and a full explanation of the company's trade secrets. While Stranger was in Charlotte, he had unfettered access to Commercial's trade secrets and during that visit such information was downloaded onto a BCG computer. Following his Charlotte visit, Stranger maintained regular e-mail and telephone contact with Commercial's personnel in Charlotte. He oversaw the submission of written questions from BCG to the Charlotte company. Stranger also had access to Commercial's customer lists and contacted its clients and prospective clients.

In late December 2005, BCG submitted its due diligence report to Summit addressing all aspects of the mortgage loan defeasance market and future prospects for Commercial. Commercial contends that Stranger, aided and abetted by BCG, launched a scheme to steal Commercial's trade secrets and establish a rival business while performing his review of the company for Summit. In early January 2006, Summit requested that Stranger and BCG destroy all trade secrets of Commercial in their possession. On January 6, 2006, Stranger indicated to Summit he would do so. In April 2006, Stranger formed Capital Defeasance Group, LLC ("Capital" or collectively with Stranger, "Defendants").

Based on information uncovered by Commercial, it appears Stranger had begun preparations to form a new defeasance company by December 29, 2005. On that date, Stranger contacted the attorney who later filed Capital's certificate of formation with an email with the subject line of "NewCo." Commercial alleges that Stranger has exercised complete domination and control over Capital and deployed the new company as a vehicle to use the stolen trade secrets, to earn profits from the stolen property, and to cause specific and direct harm to Commercial.

Commercial filed its Complaint in this matter on October 4, 2006. On March 13, 2007

3

Commercial filed an "Amended Complaint" (Document No. 24). The "Amended Complaint" alleges ten claims against one or more of the Defendants: (1) violation of the North Carolina Trade Secrets Protection Act; (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act; (3) breach of fiduciary duty; (4) unjust enrichment/constructive trust; (5) false association and sponsorship and unfair competition under section 43(A) of the Lanham Act; (6) common law trademark infringement; (7) cyberpiracy under section 43(d) of the Lanham Act; (8) breach of contract; (9) breach of implied covenant of good faith and fair dealing; and (10) negligent supervision.

Defendants Stranger and Capital filed motions to dismiss (Document Nos. 37, 40) the Amended Complaint on April 10, 2007, alleging lack of jurisdiction, improper venue and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6). On June 21, 2007, the undersigned issued a "Memorandum And Recommendation" (Document No. 71) recommending that those motions to dismiss be denied. On September 27, 2007, the Honorable Chief Judge Robert J. Conrad, Jr. issued an "Order Adopting Memorandum And Recommendation" (Document No. 76)

On November 21, 2007, Defendant BCG filed a motion for judgment on the pleadings (Document No. 86), to dismiss Count Three (Breach Of Fiduciary Duty Against Stranger and BCG) of Plaintiff's "Amended Complaint" (Document No. 24). The undersigned issued a "Memorandum And Recommendation" (Document No. 133) on March 3, 2008 recommending that the motion for judgment on the pleadings be denied.

The now pending "Motion To Compel" was filed by Defendants on February 1, 2008. Plaintiff filed a "...Memorandum In Opposition" (Document No. 107) on February 19, 2008; and the motion became ripe for disposition when Defendants filed their "Reply Memorandum In Further

Support..." (Document No. 110) on February 29, 2008.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in this action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, oppress or, that causes undue burden or expense to the opposing party. See Fed.R.Civ.P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. See, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

In the instant case, Defendants allege that the Plaintiff's interrogatory answers are deficient and its responses to the request for production are inadequate. After careful consideration of the parties' briefs on the issue, the "Amended Complaint" (Document No. 24), "Plaintiff Commercial

Defeasance, LLC's Responses To Defendant Greg Stranger's First Set Of Interrogatories" (Document No.103-4), and "Plaintiff's Response To ... Requests For Production Of Documents..." (Document No. 103-4), the undersigned reacts to the disputed answers and responses as follows.

**A. Interrogatories**

1. Defendants' "Memorandum Of Law In Support Of Motion to Compel/Preclude" (Document No. 103-2) first contends that Plaintiff has improperly designated interrogatory answers as "HIGHLY CONFIDENTIAL - COUNSEL ONLY." The parties' "Consent Protective Order" (Document No. 70) governs this issue, and specifically, ¶ 14 of the protective order outlines a procedure for objecting to the designation of discovery material as CONFIDENTIAL or HIGHLY CONFIDENTIAL - COUNSEL ONLY. Giving due recognition to the parties' "Consent Protective Order" (Document No. 70), the undersigned will not here circumvent the procedure mutually agreed upon by the parties for resolving this type of dispute.

2. Defendants contend that Plaintiff has not identified its purported "trade secrets" with sufficient particularity. However, in their "Reply Memorandum..." (Document No. 110), Defendants note that Plaintiff has recently agreed to circulate a letter identifying by Bates number those documents containing alleged trade secret information. In light of the parties' on-going efforts to resolve this issue, the undersigned will decline to compel any additional action at this time. If it has not already, Plaintiff is encouraged to respond swiftly, and with as much specificity as possible, to supplement its original answers to Interrogatory No. 1 regarding trade secret identification. If the parties cannot resolve this issue, Defendants may renew their request for relief from the Court.

3. Next, Defendants contend that Plaintiff wholly failed to answer subparts A, B, C, E, and F of Interrogatory No. 1. These subparts sought information on the money, resources and time

expended by Plaintiff in developing its trade secrets, as well as the actual or commercial value of each trade secret and the economic value a person could obtain from disclosure of the trade secret(s). The undersigned disagrees that Plaintiff "wholly failed" to answer these subparts. Plaintiff contends it "has provided the information that is available" in response to the requests of this interrogatory. (Document No. 120 at 5). The undersigned will decline to compel further action at this time.

4. Defendants also complain that Plaintiff has failed to provide full and complete descriptions of the documents it references in its answers. For example, in its Answer to Interrogatory No. 6, Plaintiff references "various documents and pleadings provided by Stranger and Capital Defeasance" and "documents it has produced in response to various discovery requests and the parties' various pleadings." The undersigned agrees that such responses are vague. To the extent it has not already, Plaintiff shall provide Defendants more useful descriptions of the documents it references so that they can be readily identified.

5. Defendants contend that Plaintiff's response to Interrogatory No. 8 was wholly unresponsive. The undersigned agrees that Plaintiff's original response was incomplete; however "Plaintiff's Memorandum In Opposition..." provides a specific answer and references a specific document, and promises to further supplement its response when additional information becomes available. (Document No. 107 at 11). The undersigned will not compel any action as to Interrogatory No. 8 at this time.

6. Defendants also challenge Plaintiff's answer to Interrogatory No. 10 as providing no information on the question of Internet confusion and diversion. Plaintiff's original response stated it was "currently unaware of specific customers who were diverted but its investigation is ongoing." (Document No. 103- 4 at 7). Plaintiff has since supplemented its answer (Document No. 107 at 11),

and the undersigned finds it unnecessary to compel further action at this time.

7. Next, Defendants contend that Plaintiff's answer to Interrogatory No. 13 provides no information. The undersigned disagrees, and also notes that Plaintiff has further supplemented its answer. (See Document No. 107 at 12). Plaintiff's original answer states that "[i]t will supplement this response with expert testimony and additional information as its investigation proceeds." (Document no. 103-4 at 47). No additional action will be compelled at this time.

8. Finally, Defendants contend that Plaintiff has failed to provide any information in response to Interrogatory No. 15. This interrogatory seeks: (1) the identity of the borrower and/or client; (2) the total consulting fee; (3) the maturity date; (4) the successor borrower residual value; and 5) the original principal balance of the defeased loan – for every defeasance transaction Plaintiff has participated in. Defendants' Interrogatory No. 15 appears likely to be "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence;" however, the undersigned will defer issuing a ruling on this interrogatory and answer. Instead, the parties are instructed to make another attempt to reach an agreement on an appropriate interrogatory/response for Interrogatory No. 15. Both parties' briefs indicate a lack of communication as to this issue: Plaintiff states that "[t]here is a substantial disconnect between the information requested by Interrogatory No. 15 and the purpose for which Defendants claim the information is needed" (Document No. 107 at 12); and Defendants' reply states that "[i]f Plaintiff is taking the position that its measure of damages is only related to the potential benefit received by Mr. Stranger and Capital Defeasance Group, and that any measure of damages related to a valuation of Plaintiff's business is irrelevant, then Plaintiff must supplement its answer to Interrogatory No. 15." (Document No. 110 at 15). The parties are instructed to re-evaluate the information sought and

the answer provided. If they are unable to resolve their differences after good faith efforts, they may request further assistance from the Court.

B. **Production Requests**

Defendants also seek to compel more complete responses to their requests for document production. In their motion to compel, Defendants contend that Plaintiff has generally placed improper limits on the scope of its production, and specifically, allege deficiencies to Request Nos. 22, 53, 54, 61, 64, 65, 74, 75, and 78. (Document No. 103 at 10-14). Plaintiff has responded that it has not limited its production as described by Defendants – to materials only made available to BCG and materials pre-dating December 2005. (Document No. 107 at 14). In their "Reply Memorandum..."(Document No. 110), Defendants call on Plaintiff to therefore "revise its response to the Requests for Production and withdraw improper limitations placed upon each and every response . . . [o]therwise [Defendants] are stuck with the initial response, which contains the improper limitations, and are left hoping that (and wondering if) Plaintiff has complied with its discovery obligations." (Document No. 110 at 16). Defendants' reply then only notes the deficiency of Request No. 22. Id.

Other than the issues now raised in their reply, the undersigned will assume the other specifically alleged deficiencies have either been resolved or are no longer being challenged. As with several claims in Defendants' motion to compel, it seems the parties have made progress toward resolving their differences on requests for production since the filing of the motion to compel. To the extent that there is still an outstanding issue as to whether Plaintiff has placed improper limitations on every response, the Court instructs Plaintiff to clarify, supplement and/or revise its answers and responses as appropriate so that Defendants will have a better understanding of how

"Plaintiff has complied with its discovery obligations." Id.

As to Request No. 22, in which Defendants seek all documents upon which Plaintiff's alleged trade secrets are based, Plaintiff contends it has provided voluminous non-privileged documents in response and will continue to supplement its production. The Court commends Plaintiff's efforts to respond fully, but will agree with Defendants that more guidance is necessary so that Defendants can know which documents produced relate to this request. Plaintiff is instructed to supplement its response to Request No. 22 with specific identification of the documents on which it contends its trades secrets are based, to the extent this has not already been accomplished. See ¶ 2 above.

The parties are reminded, consistent with the Local Rules, to make every effort to resolve their discovery disputes prior to seeking a ruling from the Court.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants Greg Stranger and Capital Defeasance Group, LLC's "Motion To Compel" (Document No. 103) is **GRANTED IN PART AND DENIED IN PART** as described more fully above.

**IT IS FURTHER ORDERED** that where Plaintiff's discovery responses have been identified as deficient by the Court, and where the parties have not already resolved the matter by agreement, Plaintiff must provide complete responses, consistent with the requirements of the Federal Rules of Civil Procedure, on or before **April 15, 2007**.

Signed: March 25, 2008

_____
David C. Keesler
United States Magistrate Judge